Rockingham
No. 80-030

## THE STATE OF NEW HAMPSHIRE

v.

## DONALD E. BAKER

December 3, 1980

774

*Gregory H. Smith*, acting attorney general (*Martha V. Gordon*, attorney, orally), for the State.

*Donald E. Baker*, by brief, pro se, and *Vincent P. Dunn*, of Concord, by brief and orally, for the defendant.

GRIMES, C.J. This appeal arises from the conviction of the defendant for the attempted murder of his wife.

The defendant was indicted on September 11, 1979, by the Rockingham County Grand Jury and charged with the attempted first-degree murder of his wife, Karen Baker. On October 25, 1979, the defendant entered a plea of not guilty by reason of insanity and waived his right to a bifurcated trial.

At trial, the defense called two psychiatrists, Dr. Payson and Dr. O'Brien, who testified that the defendant was, in their opinion, legally insane at the time of the crime. The State then called Dr. Strauss, an expert on domestic violence, to testify on the subject of

battered wives. Both the defendant's wife and his daughter had testified previously that the defendant had physically abused them on numerous occasions. Dr. Strauss testified that husbands who beat their wives had themselves often been subjected to or had observed physical violence as children in their own homes. He further testified that current research does not indicate that mental illness is an important cause of wife-beating. Dr. Payson likewise concluded on cross-examination that wife-beating is not necessarily caused by or reflective of mental illness. In response to a hypothetical question, Dr. Strauss stated that, in his opinion, a marriage such as the defendant's would probably fall within the contours of the "battered wife syndrome", and Dr. O'Brien arrived at the same conclusion on cross-examination.

The Trial Court (*Bean*, J.) overruled the defendant's objections to this entire line of questioning. The jury found the defendant guilty as charged, and the defendant appealed.

The defendant first argues that the testimony of Dr. Strauss on the subject of battered wives was only marginally relevant but was highly prejudicial and obscured the "real issue" of the defendant's insanity and therefore its admission constituted an abuse of discretion. We disagree.

Whether opinion testimony will be of assistance to the trier of fact and admitted is a matter within the broad discretion of the trial judge. *State v. Staples*, 120 N.H. 278, 281, 282, 415 A.2d 320, 322 (1980); *Wrobleski v. Constellation Corp.*, 118 N.H. 532, 533, 388 A.2d 944, 945 (1978); *Sylvain v. Estate of Sylvain*, 117 N.H. 546, 548, 375 A.2d 598, 599 (1977). The trial court must determine whether the possible prejudice resulting from the admission of evidence outweighs the evidence's probative value. *Cf. State v. Hayward*, 114 N.H. 792, 793–94, 330 A.2d 445, 446 (1974); *Rogers v. Rogers*, 80 N.H. 96, 114 A. 270 (1921). When the proffered evidence is relevant and otherwise unobjectionable, we will uphold the court's decision to admit evidence claimed to be prejudicial unless it is so inherently prejudicial as to constitute an abuse of discretion. *State v. Farrow*, 118 N.H. 296, 307, 386 A.2d 808, 815 (1978).

The testimony regarding the battered wife syndrome was offered to rebut the defendant's evidence on the issue of insanity by providing an alternative explanation for the defendant's assault on his wife. The State essentially contends that the attempted murder was but a single episode in a recurring pattern of domestic violence and was neither caused nor produced by mental illness or

insanity. We note that many courts, in a similar context, have held that testimony concerning the "battered child syndrome" is admissible to show that an injury to the child was not accidental but rather was consistent with a pattern of physical abuse. *State v. Wilkerson*, 295 N.C. 559, 570–71, 247 S.E.2d 905, 911–12 (1978), and authorities cited therein. The trial court apparently determined that the testimony in question was relevant to the issue of insanity, and we cannot say that the testimony had no bearing on the defendant's mental condition at the time the crime was committed. Consequently, the court did not err in permitting the jury to weigh and determine the probative value of the opinion testimony. *See Perkins v. Company*, 91 N.H. 211, 214, 16 A.2d 700, 703 (1940).

■ Nor do we see how the admission of this testimony unduly prejudiced the defendant. It was not the type of evidence from which "the jury could have derived no benefit . . . but could only have been confused or misled. . . ." *Perkins v. Company, supra* at 214, 16 A.2d at 703. Far from obscuring the insanity issue, the testimony bore directly upon it. We hold that the trial court did not abuse its discretion in admitting the opinion testimony with respect to the battered wife syndrome.

■ ■ The defendant next argues that the trial court erred in permitting the State's expert witness to testify in rebuttal and that the use of the hypothetical question posed to this witness was improper because the question assumed facts not in evidence. Both of these contentions are without merit. Because insanity is an affirmative defense, *Novosel v. Helgemoe*, 118 N.H. 115, 127, 384 A.2d 124, 131 (1978), the State is not required to present evidence of the defendant's sanity in its case in chief but may introduce such evidence in rebuttal after the defense has presented evidence of insanity. *Hawkins v. State*, 34 Md. App. 82, 90, 366 A.2d 421, 425 (1976). Furthermore, the record indicates that the facts on which the hypothetical question was based were in evidence. In permitting Dr. Strauss to answer the question, the trial court impliedly determined that the hypothetical would assist the jury. The hypothetical question was therefore proper. *Canney v. Travelers Insurance Co.*, 110 N.H. 304, 308, 266 A.2d 831, 834 (1970); *see* Keller, *The Hypothetical Question*, 3 N.H.B.J. 138 (1961).

■ The defendant next contends that he should have been allowed to make his closing argument after the State closed and that the trial court's denial of his request to this effect resulted in

substantial injustice to him. This argument overlooks the fact that the order of closing arguments is committed to the trial court's discretion and "[t]he court's exercise of this discretion will not be set aside except for manifest abuse." *State v. Garceau,* 118 N.H. 321, 324, 387 A.2d 330, 332 (1978). The defendant had no right to close even though he bore the burden of proof with respect to his insanity defense. *See id.,* 387 A.2d at 332. There has been no showing that the court's decision to permit the State to close was unduly prejudicial to the defendant, and we cannot say that the trial court committed a manifest abuse of discretion in denying the defendant's request to argue last.

The defendant's final argument relates to the burden of proof he must bear with respect to his insanity defense. In *Novosel v. Helgemoe,* 118 N.H. at 127, 384 A.2d at 131, we held that insanity was "an affirmative defense to be proved by a preponderance of the evidence by the defendant." The defendant contends that proof of insanity may well require the disproof of *mens rea* and that our holding in *Novosel,* therefore, imposes an unconstitutional burden of proof on him.

The State, of course, had the burden of proving beyond a reasonable doubt that the defendant "purposely" committed the crime with which he is charged. RSA 629:1 I; RSA 630:1-a; *Sandstrom v. Montana,* 442 U.S. 510, 521 (1979); *see In re Winship,* 397 U.S. 358, 364 (1970). This does not mean, however, that the defendant may not be required to bear the burden of proof on the issue of insanity, for although "evidence relevant to insanity . . . may also be relevant to whether the required *mens rea* was present, the existence or nonexistence of legal insanity bears no necessary relationship to the existence or nonexistence of the required mental elements of the crime." *Mullaney v. Wilbur,* 421 U.S. 684, 705–06 (1975) (*Rehnquist,* J., concurring); *see United States v. Tyler,* 376 A.2d 798, 803 (D.C. App. 1977); *Novosel v. Helgemoe, supra* at 123, 127, 384 A.2d at 129, 131. But see *Rivera v. Delaware,* 429 U.S. 877, 879–80 (1976) (*Brennan,* J., dissenting). Indeed, insanity and criminal intent are distinct aspects of a criminal trial between which the jury is capable of distinguishing. *Leland v. Oregon,* 343 U.S. 790, 800 (1952). Consequently, when the trial court's instructions make it clear that the jury is to consider the insanity defense only after it is satisfied beyond a reasonable doubt that the defendant was guilty of the underlying crime, requiring the defendant to prove insanity by a preponderance of the evidence does not result in an unconstitutional shift in the State's burden of proof. *Smothers v. United States,* 403 A.2d 306,

310 (D.C. App. 1979); *see Leland v. Oregon, supra* at 794–95, 800; *see also Rivera v. Delaware, supra* at 877 (dismissing for want of a substantial federal question a constitutional challenge to a Delaware Supreme Court decision sustaining a statutory apportionment of the burden of proof as to insanity similar to that mandated by *Novosel*).

Although in this case the court did not expressly instruct the jury as to the order in which it was to consider criminal guilt and criminal responsibility, we conclude that the content and sequence of the instructions made it sufficiently clear that the jury was not to address the issue of insanity until it had first determined that the State had proved all the necessary elements of its case beyond a reasonable doubt. To avoid any problems in the future, we suggest that trial judges expressly charge the jury as to the proper order of its deliberations. With this in mind, we reiterate that the "apportionment of the burden of proof [under *Novosel*] violates no constitutional guarantee." *State v. Rullo*, 120 N.H. 149, 152, 412 A.2d 1009, 1011 (1980), *citing Patterson v. New York*, 436 U.S. 197 (1977).

Although it is not essential to our holding, we note that the defendant waived the bifurcated trial to which he was, upon request, entitled. *Novosel v. Helgemoe, supra* at 124–25, 384 A.2d at 130. If the defendant was concerned that the jury might confuse the issues of criminal intent and insanity, he should have requested a bifurcated hearing because bifurcation would assure the isolation of the question of sanity from the question of guilt. *Id.* at 123, 384 A.2d at 129. Having failed to do so, the defendant cannot now complain about the burden of proof imposed on him at his unitary trial.

*Exceptions overruled; affirmed.*

All concurred.